## Case No. 7,997.

### In re LAKE SUPERIOR SHIP CANAL, RAILROAD & IRON CO.

[7 N. B. R. 376.] 1

District Court, E. D. Michigan. Dec. 3, 1872.

BANKRUPTCY—VOTING FOR ASSIGNEE—CREDITORS—WHO MAY VOTE.

1. As no particular manner of voting is presented by the bankrupt act [of 1867 (14 Stat. 517)], it may be taken by ballot or viva voce or it may be taken by calling the name of each creditor, or by calling upon the person or persons representing creditors by power of attorney to name the choice of the creditor or creditors so represented.

2. The bankrupt act nowhere directs, nor does it seem to contemplate a postponement of the vote for assignee where some of the creditors have proven their claims, in order to enable others to do so. Contra it contemplates the utmost practicable expedition in choosing the assignee.

3. Creditors who have proved their claims and are entitled to vote for an assignee, may, if they see fit, consent to wait for others to prove before proceeding to elect an assignee, but it is optional with them.

4. The taking of a vote pending a contest over the postponement of proof of claims approved.

5. Creditors whose proof of claims has been postponed by a register, and who have not been allowed to vote for the assignee, if dissatisfied with the result of the vote, and if they deem the postponement of their claims erroneous, may have the proceedings certified to the court and if the postponement is shown to have been erroneous, the court may set aside the result of the vote and direct a new vote to be taken.

[Cited in Re Northern Iron Co., Case No. 10,-322; Re Jackson, Id. 7,124.]

6. The postponement of proof of claims affects no right of the creditor except the right to vote for assignee.

7. Proof of claims filed after election for an assignee will not entitle claimants to a vote thereon to change the result of an election appealed from.

### By HOVEY K. CLARKE, Register:

I, the register in the above named case, do hereby certify, that in the course of proceedings before me in the above bankruptcy, the first meeting of creditors for the choice of an assignee commenced on the twenty-eighth day of September last, and was, from time to time, continued and adjourned to the eleventh day of November instant; that during said meeting up to the eleventh day of November depositions to prove sixty-eight claims against said estate have been offered, of which fifty-six have been filed, and the remaining twelve are held, under objection, for the determination by the district judge, whether they shall be admitted to be represented in the choice of an assignee, or whether they shall be postponed until after the assignee is chosen. Of the fifty-six actually filed, nineteen are objected to, and the objections being insisted upon, it becomes necessary that the question of validity shall be adjourned into court for determination. The allegations of fact in support of the various objections appear in the

1 [Reprinted by permission.]

affidavits filed during the meetings as from time to time the questions arose and the occasion for corroborative or counter affidavits were presented. These, thirty-three in number, accompany this certificate, and are marked from A to H inclusive. The depositions also, which are offered as proofs of claims and which are objected to, accompany the certificate. No attempt is made to classify or digest these affidavits. Much of their substance is regarded as having but little bearing on the question now in controversy; and the advantage to be gained by any attempt at a careful and satisfactory analysis of their contents would not be sufficient to justify the delay which would necessarily result from such an attempt. The controversy is—who shall be allowed to participate in the choice of the assignee. It is proper to premise, that in this controversy no difference is supposed to exist between those whose proofs of debt have been filed by the register, and those which have not, because they are held by him as proper to be postponed until after the choice of an assignee. While the filing of a deposition by a register involves his approval of it, and is the only mode of approval which in the practice exists, yet as the first meeting of creditors is specially designated as the time for proving debts and the choice of an assignee, and though in practice, depositions, if correct in form, are filed whenever they are presented, yet it is evidently the intent of the act that at the first meeting every creditor has a right to be present and contest the right of any other. It is manifest, therefore, until this opportunity has been afforded, no creditor can be concluded by the ex parte act of the register in filing a claim which seemed to him unobjectionable. I regard, therefore, all the claims presented as entitled to the same consideration, as though none or all of them had been filed. But that after the choice of an assignee, at the close of the first meeting, then no creditor whose claim has been filed by the register can be deprived of his status as a party on the record of the cause except on notice as prescribed in general order thirty-four. All the creditors who have filed or offered proofs of claim except one are represented either by Mr. A. Russell or Mr. D. M. Dickinson. They may be regarded, therefore, as representing the two parties to the controversy; but as some of the objections are made by each, against the claims presented by the other, it will be more convenient to deal with the questions arising in the abstract, and then apply the conclusions to the cases within it.

First. It is objected that the proof of the claims of such of the creditors as are shown to be secured, ought not to be admitted until after the choice of the assignee. All the depositions offered, however, are in the usual form for proving unsecured claims, and contain the allegation prescribed in form No.

22,—that the deponent "has not, nor has any person by his order or to his knowledge or belief, for his use, had or received any manner of satisfaction or security whatsoever;" and to this point—whether this allegation is true—a large portion of the affidavits is directed. I regard this objection as without foundation, because the fact that the claim is presented and sworn to, as an unsecured claim, amounts to a relinquishment of any security which might otherwise exist—and that which is alleged as security in the affidavit, will, if it be found to exist, accrue to the benefit of other general creditors upon which the assignee will be expected to insist. If this conclusion be correct it disposes of this objection to the right of any creditor to vote for assignee.

Second. It is also objected to several of the proofs that the averment as to the consideration of the claim which the act (section 22) requires to be stated, is either wholly wanting or is insufficient. This is a very important question, and very substantial rights of creditors are involved in its determination.

It is erroneous to suppose that facts which would establish a plaintiff's right to recover before a common law court in an action of assumpsit are all that is necessary to establish the right of a creditor to participate in the distribution of a bankrupt's assets in bankruptcy. It is undeniable that the bankrupt act requires more than this; and it demands moreover a particular mode of proof. At common law, facts may be shown by any competent witness; but in bankruptcy the oath of the claimant is indispensable "unless he is absent from the United States, or prevented by other good cause from testifying." He is required also to set forth his demand—which, as I understand it, requires him to state whether it is upon an open account, a promissory note or judgment; he is also required to state the consideration. No such proof would be necessary in an action against the bankrupt upon his note, or upon a judgment against him. Why the difference? Obviously, because the controversy is now between other parties. As against the bankrupt, the admission involved in his signature to a promissory note, or, more conclusively still, in an action upon a judgment against him when he had been duly served with process, will bind upon him the well understood principle, that such admission, being against his interest, it is not to be presumed that he would have given his note or suffered a judgment to pass against him, except upon an adequate and valid consideration. But on his adjudication as a bankrupt, all his interest in the property ceases, except upon the possibility of a surplus remaining after all his debts are paid, a possibility too remote in most bankrupt cases to be entitled to much consideration, and the controversy becomes one between the creditors as to its distribution, each being a party against all the rest, and to allow

the bankrupt's admissions, whether expressed by his signature to a note or by suffering a judgment, to bind any party to this controversy, is not only to bind one man by the admission of another, but also to enable the bankrupt to accomplish that which it was the chief object of the act to prevent, namely, a preference to a creditor, and especially to defeat any attempt to create nominal creditors for the advantage of the bankrupt against the day of distribution. The purpose of the act is most manifest to prevent any but bona fide creditors from participating in the distribution. To this end, the act requires the oath of a party claiming to be a creditor as to the consideration of his claim as a most important means of testing its good faith; and if, for any reason, a claimant fails to do this, it is difficult to see why, if the act is to be construed according to its obvious intent, such failure will not be just as fatal to his right to participate in the distribution, as if he had neglected to state whether he had received any satisfaction or security for his claim as is also required by the same section of the act. Whether the requirement is a wise one, in view of the currency, before maturity, which the law gives to commercial paper, is not the question; it is simply an inquiry, what has the act prescribed? To say that the act was not intended to apply to commercial paper, acquired in good faith before maturity, is a sheer assumption. There is no provision for the allowance of any claim, except such as shall conform to section twenty-two; and these provisions of the bankrupt act affect all negotiations of commercial paper with notice that such as is actually without consideration, whether with or without the knowledge of the holder, cannot, in the event of the bankruptcy of the maker, be proved against his estate. In view, moreover, of the facility with which persons contemplating bankruptcy could manufacture paper, which by the aid of confidential friends could be transferred to holders without notice before maturity and thus secure a share in the distribution, it is quite plain that the main purpose of the act. namely, a fair division of the bankrupt's property among his bona fide creditors, requires a strict compliance with the terms of the act which are designed to protect the rights of such creditors and exclude all others.

The claims to which this objection of an insufficient statement of consideration applies, arise upon notes of the corporation coming before maturity to the hands of the claimants as collateral security for loans to other parties. This objection is raised to claims proved by Davis, receiver of the Ocean National Bank. It also applies to depositions offered to prove claims in cases of the National Commonwealth Bank, in the cases of Beekman, receiver of Union Square National Bank, and to Virgil de Escoriaja. If these notes, to the amount of about fifty

thousand dollars were made by the bankrupt corporation and delivered to the payees without any consideration as mere gratuities, they certainly ought to be excluded from the liabilities of the corporation if there be any legal warrant for such exclusion. If they were made, as is probable, as a part of a negotiation by which the payee named in the notes should raise money for the use of the corporation, the proof of this fact would establish an adequate consideration moving to the corporation for the execution and delivery of the notes; and, if the fact be so, there is no reason why it should not be shown by the parties interested to establish it. The depositions to prove the claims of Davis, receiver of the Ocean National Bank, were received and filed by me under the impression that they did disclose such an interest in the loan by the bank to Callender as would import a sufficient consideration for the execution and delivery of the notes. But upon a more careful examination of these depositions, I am not satisfied that such a state of facts appears; and the affidavit of Mr. Stevenson, the former president of the bank, filed in support of Mr. Davis' deposition, to rebut the allegation that the claim was secured, so far as it has any bearing on the point, is to the effect that the loan was to Callender for his benefit; and he denies all knowledge of consideration between Callender and the bankrupt corporation. These considerations, I think, require the postponement of the proofs of the claim of Davis, receiver, &c., and of De Escoriaja until some evidence shall be offered of the consideration of the notes they hold. There is less danger of injustice to them from this postponement from the fact that they hold them as collateral only to other claims the value of which is as yet unknown. And if the corporation be a guarantor only, it is no hardship that the creditor shall be required first to exhaust the responsibility of the principal. For these reasons I declined to file the depositions to prove the claim in cases of the National Commonwealth Bank and of Beekman, receiver of the Union Square National Bank, when they were offered. Since which, the affidavit of Callender has been filed—to show that these were secured claims—from which it appears that in the creation of these debts he "acted on behalf of the corporation." 1 think that this statement shows a sufficient consideration that the loan to Callender in form, was, in fact, to the corporation, and that therefore the Commonwealth National Bank and Beekman, receiver of the Union Square Bank, should be admitted as creditors.

Third. The claims of Stone, Jordan & Thompson and of William K. Lothrup are objected to on the ground that they have been assigned since they were proved, and the letters of attorney to vote for assignee have been transferred from one of the two sides of this controversy to the other; and the claim of H. Smitz & Co., Betzler & Kopp, Frank Kopp, D. E. Washburn, Benj. Weider, Wm. Hany, H. Shelvey and S. F. Hodge, are objected to on the ground that they have been paid. To establish this fact the affidavit of Alfred Wild, the late treasurer of the corporation is produced, to which are annexed the receipts of the several creditors. These receipts all bear date since the depositions to prove the claims were taken. If it is not sufficiently obvious that these transfers and payments have been made with a view to change the vote for assignee at this meeting, it is certainly clear that if such a practice shall be admitted as regular, the trafficking in claims, with a view to effect sinister objects, may interfere so seriously with a proper administration of the bankrupt act that it ought to be very decidedly discouraged.

Fourth. The statements in the affidavits filed to support the objection to the claim of Alexander Campbell and Alexander Pope seem to me of a character to require that these claims be investigated by the assignee before they be admitted as creditors.

Fifth. The objection to one item of the claim of H. S. Wells, of ten thousand dollars, for two thousand shares of the stock of the Brunswick & Albany Railroad Co., seems to be well taken, and this item should be investigated by the assignee before allowance.

Sixth. The remaining objection to the claim of Bowman, Johnston & Co., that it was proved by a partner who is also receiver appointed under the mortgage foreclosure proceedings, and the objection to the claim of Thomas Castigan—being for his services as a notary public and stenographer, the objection being the corporation had no authority to create a debt for such services— I regard as each without foundation, and therefore that no valid objection appears to either of these claims.

Seventh. The remaining question presented by this controversy, is, so far as I am informed, entirely novel and is certainly very important. The question is, ought the officers of a corporation in bankruptcy who were responsible for the management of its affairs during the period when the acts of bankruptcy occurred on which the adjudication was founded, to be admitted as creditors of the corporation before an assignee has been appointed? Ought not the debts created by them in their own favor against the corporation to be investigated by an assignee who has been nominated by the other creditors? If this corporation were really bankrupt at the time these proceedings were commenced, ought its officers to be allowed to continue their control, by the nomination of an assignee in their interest, after the adjudication in this court? or if, in fact, the bankruptcy of the company is colorable only, and the involuntary form in

which these proceedings are cast is the result of an understandng between the petitioning creditors and the officers of the company, which may be reasonably inferred from the fact that the adjudication was obtained in this case by the consent of the company, through their counsel in open court, on the day after the petition was filed —a method of obtaining a voluntary adjudication in the case of a corporation, it may be remarked, which evades the provisions of section 37 of the bankrupt act—if these proceedings are to this extent collusive, and the bankrupt court has been resorted to for some other purpose than the only one which the bankrupt act admits as the proper object of such proceedings, namely, a fair distribution among the creditors of the effects of the bankrupt, it seems to me to be the duty of the court to take care, especially in the case of such a contest as that developed here, that the assignee to be appointed shall not derive his appointment from a party whose conduct in administering the affairs of the corporation specially requires investigation, and whose purpose in permitting the corporation to be adjudged a bankrupt is not clearly obvious. The officers of this corporation were in contempt at the time of the return of the warrant, in that they had not delivered to the marshal the schedule of creditors and property of the bankrupt's estate as required by section 42 and the order of adjudication; and nothing has appeared since to show a compliance with their duty in this particular.

But it further appears from the papers filed during this meeting, that these gentlemen who insist upon the right to vote for assignee were not only the officers of the company, but they were also the "principal owners of the stock of the company." See copy of the examination of Alfred Wild taken in the bankruptcy proceedings against him in the Southern district of New York [In re Wild, Case No. 17,645]. They are, in fact, the bankrupt. They constitute its will. They form and express its purposes. They are everything it is, and all it is, except the legal entity which the law calls a "corporation." They now claim to have been its creditors on the first day of July last to the amount as computed to the date of the commencement of these proceedings, of six hundred and fifty-three thousand two hundred and sixty-six dollars and thirty-four cents, which they or their immediate transferees (the latter to the amount of one hundred and thirty-six thousand five hundred and forty-five dollars and thirty-six cents) propose to prove in this case, and on which they desire to vote at this meeting. It is difficult to see wherein, on principle, the vote of the main body of the stockholders of a bankrupt corporation differs from that of an individual bankrupt at the election of an assignee of his estate. It is not denied, of course, that the stockholders of a corporation may be one of its creditors, but the power to appoint an agent through whom their claims are to be investigated ought certainly to be in other hands; and therefore the proof of all such claims should be postponed until after the assignee has been chosen.

I have thus considered all the objections presented to me against any of the claims offered at this meeting, except to the claims of Horace J. Frost and George H. Duryee. These objections were stated orally—I do not find them stated in writing in any of the papers filed, nor am I able to recall the grounds, if any were stated, upon which it was claimed that they should be rejected.

On the eleventh day of November, which was the eleventh day of the meeting, after all the papers which either party desired to offer had been received and no further delay asked for by either party except by Mr. Dickinson to afford him time to reply to the "petition" filed by Mr. Russell on that day, I intimated my purpose to certify all the questions which had arisen, into court for determination by the district judge; and in order that I might put the case into a proper form to be disposed of by the judge I would then proceed to take a vote for assignee. Mr. Russell on behalf of the creditors he represented voted for Mr. George S. Frost. Mr. Dickinson, protesting against the taking of the vote, stated that if it was a proper election he would vote for George Jerome and Asa D. Dickinson. Mr. Moore on behalf of F. W. Anthony voted for George Jerome and Asa D. Dickinson. Every creditor who has filed or tendered proof of a claim had executed letter of attorney either to Mr. Russell, Mr. Dickinson or Mr. Moore. Every person who had thus far claimed to be a creditor was present by attorney. I did not deem it proper to assume from the attitude of the parties as represented by their attorneys, that an election was impossible. That could only be legally determined by the result of a vote; and the result was singularly conclusive as showing a choice by the creditors impossible. The vote as taken showed a non-concurrence between the majority in number and the majority in value. The result would have been the same if every claim had been admitted; or if every objection urged by one side had been allowed, and every objection urged by the other side had been overruled; in neither of these cases could a concurrence of number and value have been attained unless Mr. Russell or Mr. Dickinson had changed the vote of the parties they represented so as to co-operate in effecting a choice. It seems to me that the contingency contemplated by section 13 of the act —"If no choice is made by the creditors at said meeting, the judge, or if there be no opposing interest, the register, shall appoint one or more assignees"—has occurred. There has been no choice by the creditors; there being an opposing interest, the register can-

not appoint, and it then becomes the duty of the district judge to "appoint one or more assignees." I annex to this certificate a schedule of creditors who have proved, or offered to prove their claims, exhibiting on pages 1, 2, 3, and 4 those that I have filed; on page 5 those of the stockholders of the company and claims derived from stockholders; on page 6 those not filed and held for determination as to the statement of the consideration, and claims filed since the day when the vote for assignee was taken, all computed to the commencement of proceedings, August 26th, 1872. The amount of each claim is also stated in a column under the name of the attorney authorized to represent it at the meeting.

LONGYEAR, District Judge. Section 13 of the bankrupt act (14 Stat. 522), amongst other things, provides "that the creditors shall, at the first meeting held after due notice from the messenger, in presence of a register designated by the court, choose one or more assignees of the estate of the debtor; the choice to be made by the greater part in value and in number of the creditors who have proved their debts. If no choice is made by the creditors at said meeting, the judge, or if there be no opposing interest, the register, shall appoint one or more assignees." Section 13 (14 Stat. 538), amongst other things, provides, "that when a claim is presented for proof before the election of the assignee, and the judge entertains doubts of its validity or of the right of the creditor to prove it, and is of opinion that such validity or right ought to be investigated by the assignee, he may postpone the proof of the claim until the assignee is chosen." While the questions presented by the register's certificate are quite numerous they all resolve themselves into this one, viz: whether the certificate shows the state of things to exist in which the judge shall appoint the assignee, as contemplated by section 13; and the questions presented are of no importance to the present consideration except as they bear upon that one question.

The objections to the proceedings are: First, that the vote which was taken was not such as is contemplated by the act; and, second, that no vote could be taken until the questions certified as to the postponement of proof of claims by the register had been decided by the court; and hence, that after the decision of those questions, it should be referred back to the register for another vote.

First. No particular mode or manner of voting is prescribed by the act. It may be assumed therefore that any mode or manner of voting, by which the choice of each creditor entitled to vote is clearly expressed, is sufficient. It may, no doubt, be taken by ballot or viva voce. It may be taken by calling the name of each creditor, or by calling upon the person or persons representing creditors by power of attorney to name the choice of the creditor or creditors represented by him. The latter mode seems to have been adopted in this case, and while it cannot be recommended as the most approved mode, it can hardly be said to be incompetent or irregular, so long as it clearly appears, as it does in this case, that the choice of each creditor who had proved his claim was thereby clearly expressed. Therefore, applying the test above stated, I think the vote taken, as certified by the register, was lawful, so far as its mode and manner are concerned, and the same is approved.

Second. The register's power to postpone proof of claims under section 13, is not questioned by the learned counsellor who appeared before me to support this objection. Neither is it questionable, in my opinion. The objection is founded upon the argument that the postponement by the register being contested, and by the register certified to the court for decision, the claims are simply in process of being proved, and, therefore, until the decision of the court is obtained it is not determined whether they are proved or not. The obvious answer to this argument is that the bankrupt act nowhere directs, nor does it seem to contemplate a postponement of the vote for assignee where some creditors have proven their debts, in order to enable others to do so. On the contrary, it seems to contemplate the utmost practicable expedition in choosing the assignee, and for a very good reason; because until there is an assignee there is no one to represent, or whose official duty it is to look after the interests of the estate. If a creditor had it in his power thus to postpone and delay the choice of an assignee, a number of them, being friendly to the bankrupt, and in his interest, or from some other improper motive, might, by presenting at intervals proof of claims, no matter how invalid or questionable, delay the choice of the assignee almost indefinitely. Such a power, it seems to me, would be so diametrically opposed to the spirit and intent of the bankrupt act, if not to its express letter, that I cannot for a moment concede that it was contemplated or intended, or can in any case be allowed. The creditors who have proved their claims and are entitled to vote for assignee, may no doubt consent, if they see fit, to wait for others to prove before proceeding to choose the assignee. It is, however, optional with them. But even this power should be exercised sparingly, and the vote ought always to be taken at the earliest practicable moment. In this case there seems to have been a delay of two months, and the creditors had eleven different sittings, a delay which can hardly be justified in this or in any case. The taking of the vote was certainly not premature. Therefore the taking of the vote pending a contest over the postponement of the proof of claims is approved.

It is asked, are creditors then, whose proof of claim may have been erroneously postponed by the register, to be entirely deprived

of their right to a voice in the choice of an assignee? I answer, by no means. In any case where a creditor or creditors, whose proof of claim has been postponed by the register, are dissatisfied with the result of the vote for assignee, and consider the postponement of themselves erroneous, such creditor or creditors may have the proceedings certified to the court, and if the postponement shall appear to have been erroneous, the court may set aside the result of the vote and refer the matter back for a new vote, and probably would do so in every case, unless it at the same time appeared to a reasonable certainty that the result would not be changed by another vote. The postponement of proof of claim affects no right of the creditor, except the right to vote for assignee, and where it appears that the exercise of such right would be barren of results, it would be the merest mockery to delay the proceedings in order to afford such creditor the opportunity to exercise such right.

I regard this case, as presented by the certificate of the register, as coming clearly within the case above stated, that is, a vote for choice of assignee pending contests over postponed proof of claims, and to set aside the result of the vote taken, and to allow a new vote to be taken. It only remains, therefore, to apply the principles just enunciated to this case. The certificate of the register shows that all the creditors who were admitted to vote for the assignee, except one, who was represented by Mr. William A. Moore by power of attorney, and all the creditors whose proofs of claims were postponed by the register, were represented by either Mr. Alfred Russell or Mr. Don M. Dickinson, by power of attorney. The certificate also shows that all the creditors represented by Mr. Dickinson, and the one represented by Mr. Moore, voted for Mr. George Jerome and Mr. Asa D. Dickinson, and that all represented by Mr. Russell voted for Mr. George S. Frost, and that the former had a large majority in value and the latter a majority of twenty in number. The larger part in value and in number not concurring, there was, of course, no election. Upon a careful analysis of the data furnished by the certificate (and they are very full and complete) I find there is one, and only one, hypothesis upon which the creditors represented by Mr. Dickinson and Mr. Moore could overcome the majority against them in number. That hypothesis is this: That all the admitted proofs objected to by Mr. Dickinson be postponed; that all the postponed proofs represented by him be admitted; that the postponed creditors so admitted would vote for the same person as the other creditors represented by Mr. Dickinson; that all the admitted proofs objected to by Mr. Russell should remain admitted; and all the postponed claims represented by Mr. Russell should remain postponed. On this hypothesis the creditors represented by Mr. Dickinson and Mr. Moore would have a majority of one.

It follows, therefore, that if the register was correct in refusing to postpone any one of the admitted proofs objected to by Mr. Dickinson, or in postponing any one of the claims represented by him, the result would not be changed, because there still would have been no election. On looking into the register's certificate I find that I fully concur in the reasoning and conclusion of the register in postponing the proofs of claims of the officers and directors of the bankrupt company, and I must, therefore, approve the same. These are four in number, viz.: Perez J. Avery, William H. Rainey, assignee of Alfred Wild, William L. Avery and J. Edwin Conant & Co. I also approve of the postponement by the register of the claims of Sallie Lee Conant, Robert Clenighen and Henry W. Perkins, three in number, making seven in all, and all represented by Mr. Dickinson.

These conclusions make the hypothesis upon which alone, as we have seen, the result could be changed impossible, and render a decision upon the remaining postponements and refusals to postpone by the register unnecessary. I have, however, looked into those matters, and I am satisfied that a decision upon them would only make the disparity in number still greater. I have not taken into the account the ten proofs of claims certified by the register to have been filed since the vote was taken, because, first, being represented as they are, in equal numbers by Mr. Dickinson and Mr. Russell, it is fair to presume, nothing appearing to the contrary, that their votes would be equally divided between the persons voted for by the other creditors represented by those gentlemen respectively; in fact such was conceded to be the case on the argument. Second, their proofs having been filed since the vote was taken, (and this is the principal ground,) they could not now be allowed to come in to change the result. This matter has been held under advisement by me much longer than it ought to, or would have been, but for the fact, as counsel are aware, that ever since it was submitted, and up to the last two or three days, I have been constantly engaged upon the bench of the circuit court in the trial of jury causes, no other member of that court being present. This circumstance has also prevented me from devoting the requisite time to writing out my views; but, having arrived at my conclusions, I thought it not best to delay the decision longer in order to write a more elaborate opinion.

It follows from what has been said, as a matter of course, that the register's certificate that no choice of assignee has been made by the creditors at their first meeting is approved and confirmed, and consequently that the duty to appoint one or more assignees has devolved upon me, as provided by section 13 of the bankrupt act. The duty of appointing assignees in this matter is one of unusual delicacy and importance, on account not only of the complications attending it and the large

values and amounts involved, but also because it concerns important interests of state as well as of individuals. I have taken these considerations all into the account, and endeavored to make such selections as will subserve the interests of all concerned. I herewith hand to the clerk an order appointing George Jerome, of the city of Detroit, and Fernando C. Beamen, of the city of Adrian, residents of this district, assignees of the said estate.

[Certain proofs of debt were ordered admitted in Case No. 7,998.]